### 495. HINES *v.* McCOMBS *et al.*

1. One who by will is made not only the devisee of a life-estate in the lands of the testator, but is also made executor of the will and trustee of the fee, and is given full power of disposition as to all property, real, personal, or mixed, to the end that an income may be derived for the support of himself and children, may lawfully execute a lease of reasonable duration upon the lands of the estate; and such a lease will not expire upon his death, even though it occur before the last year of the lease.

2. In such a case the executor or trustee may transfer to another, by assignment, the rent notes taken as consideration for the lease; and the right of the transferee. in the rent will be superior to that of the remainderman, even after the death of the life-tenant.

Appeal, from Baldwin superior court—Judge Lewis.　January 16, 1907.

Submitted October 15,—Decided October 22, 1907.

Isabella Hendrix died, leaving a will. So far as they are material to this controversy, the provisions of the will are substantially as follows: Her husband, H. E. Hendrix, is appointed executor and trustee; and in both capacities he is relieved from accountability to any court for his conduct. To the said trustee is devised all the testator's property, real, personal, and mixed. "Said H. E. Hendrix, as trustee as aforesaid, shall have absolute custody and control of each and all of said property, with power to sell or exchange any part thereof, as a change of investment for the purpose of this will, or to make advancements to our children, in his discretion, to provide for their maintenance and education, then especially to secure a maintenance to and for himself therefrom during his natural life. . . At the death of the said H. E. Hendrix, trustee, all of said property remaining, or those substituted therefor by exchange, shall be equally divided between my surviving children and their children, per stirpe, having regard to any advancements that may have been made to any."

In pursuance of his power under the will, H. E. Hendrix rented certain of the lands of the estate to Tom Legin for the years 1903 and 1904 and took from Legin a rent note therefor, the note being

made payable to "H. E. Hendrix, Ext." On May 15, 1903, Hendrix transferred the note to G. T. Whilden, signing the transfer "H. E. Hendrix, Ext." In August, 1903, Whilden transferred the note to the plaintiff in error, Hines. In May, 1903, H. E. Hendrix died. Hines collected the rents from Legin for the year 1903; but in December of that year the latter surrendered the possession to Mrs. McCombs and Mrs. Allen, who were the children of Mrs. Hendrix and therefore remaindermen under her will, and who had also qualified as administrators de bonis non c. t. a. on her estate. They rerented the land to Legin for the year 1904. This was done without Hines' knowledge or consent. In the fall of 1904 Legin brought the rent cotton and delivered it to Mrs. McCombs and Mrs. Allen in payment of his rent. Hines caused a distress warrant to be levied on the cotton, and it was resisted by Legin, as well as by Mrs. McCombs and Mrs. Allen, their several rights being, by a consent arrangement, joined in one defense. To a judgment adverse to him Hines brings error.

*Hines & Vinson,* for plaintiff.

*D. B. Sanford* and *D. S. Sanford,* contra.

POWELL, J. (After stating the facts).

Under the will, H. E. Hendrix was not only the executor and the holder of the life-estate, but he was also the donee of an additional power, not ordinarily attaching either to the office of the executor or to the estate of a life-tenant. Viewed solely as a tenant for life, he would have possessed the statutory power of control over the entire estate for the purpose of rentals and leases only to the end of the year of his death. See *Story* v. *Butt, ante,* 119, (58 S. E. 388). However, a review of the English cases will show that long before the enactment of the statute of 14 & 15 Vict. c. 25, from which our section of the Civil Code (§ 3093) was adapted which gives the statutory power to the life-tenant of making a rent contract binding to the end of the year of his death, or of the British Land-Settlement Acts, which have further extended this power, it was not uncommon for grantors and testators to confer upon life-tenants, or trustees for life-estates, the power of making leases which would be binding after the death of the life-tenant; and the right of grantors and testators to make the grant of such powers has never been questioned, either before or since the passage of the statutes referred to above. Under the

will before us, H. E. Hendrix had not only the right to enjoy the estate for life, but also to dispose of any or all of it, and especially to derive an income therefrom; and the remaindermen, by express terms of the will, took an estate in only the "property remaining" undisposed of at his death. We do not mean to say that if he had attempted to sell any of the lands, he would not have been compelled to expose it at public outcry, under the Civil Code, § 3460; but to rent lands for two years is not to sell them. *Hutcheson* v. *Hodnett,* 115 *Ga.* 990 (42 S. E. 422). The terms of the will in that case are very similar to those of the will now in question; and we quote the headnote as pertinent here: "A trustee in possession of land, charged with the duty of managing and controlling it and using the income therefrom for the maintenance, support, and education of the beneficiaries of the trust, may grant leases of the same, provided the time fixed for the duration of the leases is not unreasonable, and the amount stipulated to be paid as rental is a reasonably fair compensation for the use of the land for the time specified in the leases, they being otherwise reasonable in their terms." The rent contract between Hendrix and Legin was a valid contract for the full term. We probably should call attention to the fact that in the case just cited the trustee was expressly forbidden to encroach upon the corpus for the purpose of raising income for the maintenance of the beneficiaries, while in the present case Hendrix was expressly authorized to do so. The legal fee stood in him as trustee; and "Trustees who have the legal fee in lands may lease them to any extent, the right being incident to the legal estate." 1 Wash. Real Prop. (6th ed.) 629, cited approvingly in *Hutcheson* v. *Hodnett,* supra. Possibly in this State this general statement should be limited to leases under which only a usufruct passes.

The further question that arises is, did Hendrix have the right to transfer the rent note, which we have just held was lawfully taken by him? This rent note, under the law, was income. *Manget* v. *Hightower,* 63 *Ga.* 217. He had full power of disposition over the income. The note was not payable to his intestate, but to himself, either personally or in his representative capacity. In either event, section 3449 of the Civil Code, regulating the mode of sale of insolvent papers of estates, is not applicable; but the common-law rule which gives the trustee power to transfer a paper

payable to himself, though taken in his representative capacity, applies. See *Thompson* v. *Thompson,* 77 *Ga.* 697 (3 S. E. 261). If, instead of taking a note, he had been paid in advance, in cash, for the rents for the full term, he could have spent the cash without accountability; he had a similar right to take a note instead of cash, and to convert the note into money and use it. The tenant, by attorning to the remaindermen, could not divest Hines of his lien upon the crops raised on the rented premises.

*Judgment reversed.*